962 F.2d 1366
 60 USLW 2675
 GUAM SOCIETY OF OBSTETRICIANS AND GYNECOLOGISTS; Guam
Nurses Association; The Reverend Milton Cole, Jr.; Laurie
Konwith; Edmund A. Griley, M.D.; William S. Freeman, M.D.;
John Dunlop, M.D.; on behalf of themselves and all others
similarly situated, and all their women patients, Plaintiffs-Appellees,
v.
Joseph F. ADA, Governor of Guam, in his official capacity,
Defendant-Appellant.
 No. 90-16706.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 4, 1991.
Decided April 16, 1992.
As Amended June 8, 1992.
 
 Paul B. Linton, Americans United for Life, Chicago, Ill., Arnold H. Leibowitz, Cameron & Hornbostel, Washington, D.C., for defendant-appellant.
 Anita P. Arriola, Arriola, Cowan & Bordallo, Agana, Guam, Lynn M. Paltrow, Simon Heller, American Civil Liberties Union Foundation, New York City, for plaintiffs-appellees.
 Appeal from the United States District Court for the District of Guam.
 Before: CHOY, D.W. NELSON and CANBY, Circuit Judges.
 CANBY, Circuit Judge:
 
 
 1
 On March 19, 1990, the Territory of Guam enacted a statute ("the Act") outlawing almost all abortions.[1] The only exceptions were abortions in cases of ectopic pregnancy, and abortions in cases where two physicians practicing independently reasonably determined that the pregnancy would endanger the life of the mother or "gravely impair" her health. All other abortions were declared to be crimes, both on the part of the women submitting to the abortions and on the part of the persons procuring or causing them.
 
 
 2
 The validity of the Act was immediately challenged in this class action brought by the Guam Society of Obstetricians & Gynecologists and others against Joseph F. Ada, the Governor of Guam. The district court accurately viewed the Act as a direct challenge to the regime of Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), in the Territory of Guam. The district court held that Roe v. Wade applied, and granted summary judgment for the plaintiffs, permanently enjoining enforcement of the Act.[2] 776 F.Supp. 1422. We affirm.
 
 
 3
 * The plaintiffs in this case are the Guam Society of Obstetricians & Gynecologists; the Guam Nurses Association; physicians Edmund A. Griley, William S. Freeman, and John Dunlop; the Reverend Milton H. Cole, Jr.; and Laurie Konwith. The health care providers in this group clearly have standing to bring this action. See Planned Parenthood v. Danforth, 428 U.S. 52, 62, 96 S.Ct. 2831, 2837, 49 L.Ed.2d 788 (1976); Abele v. Markle, 452 F.2d 1121, 1125 (2d Cir.1971). Because some of the plaintiffs have standing, it is not necessary to determine whether the others do. See Doe v. Bolton, 410 U.S. 179, 188-89, 93 S.Ct. 739, 746, 35 L.Ed.2d 201 (1973); see also Watt v. Energy Action Educ. Found., 454 U.S. 151, 160, 102 S.Ct. 205, 212, 70 L.Ed.2d 309 (1981); Grove v. Mead School Dist. No. 354, 753 F.2d 1528, 1532 (9th Cir.), cert. denied, 474 U.S. 826, 106 S.Ct. 85, 88 L.Ed.2d 70 (1985).
 
 
 4
 The district court held that the plaintiffs could maintain their action under 42 U.S.C. § 1983, and awarded them relief under the due process guarantees recognized in Roe v. Wade. The court determined that those guarantees applied in Guam, under the provisions of the Mink Amendment to the Guam Organic Act, 48 U.S.C. § 1421b(u). The Territory of Guam in the person of Governor Ada ("Guam") challenges all of these rulings on appeal, and urges as well that the authority of Roe v. Wade has been undermined by later decisions of the Supreme Court. Before we address these points, however, we must deal with a threshold issue raised by the plaintiffs.
 
 A. Severability of the Unappealed Sections
 
 5
 The district court held that Sections 4 and 5 of the Act violated the First Amendment, and Guam did not appeal from that ruling. The plaintiffs now argue that these sections are not severable from the remainder of the Act. The result, they contend, is that the entire Act has been invalidated, in effect, by the district court's unappealed ruling, leaving nothing to be decided on this appeal. We reject this contention because we conclude that Sections 4 and 5 are severable from the other parts of the Act.
 
 
 6
 The standard for determining the severability of an unconstitutional provision is well established: " 'Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law.' "
 
 
 7
 Alaska Airlines, Inc. v. Brock, 480 U.S. 678, 684, 107 S.Ct. 1476, 1480, 94 L.Ed.2d 661 (1987) (citations omitted). The sections of the Act that remain if Sections 4 and 5 are severed clearly are fully operative as a law. Unless there is evidence of contrary legislative intent, the remainder of the Act should therefore survive the invalidation of Sections 4 and 5.
 
 
 8
 The plaintiffs put forward two related arguments suggesting a legislative intent against severability. First, they contend that Section 7, which provides for a referendum to determine whether the entire Act should be repealed,[3] demonstrates that the Guam Legislature intended the Act to stand or fall as a whole. Second, they argue that the Legislature's intention was to pass a comprehensive antiabortion statute, and that removal of Sections 4 and 5 creates a weaker and less comprehensive statute.
 
 
 9
 With respect to the first argument, the fact that there was to be a referendum on the entire Act reveals very little about legislative intent regarding severability. The plaintiffs place undeserved emphasis on the words "in its entirety." That part of the section provides that, if a majority of the voters vote to repeal the law, "such public law shall be repealed in its entirety." An entire repeal is the obvious and logical result of a vote to repeal in a referendum; the words in question signify no more than that.
 
 
 10
 While the plaintiffs' second argument is not wholly implausible, they present no evidence to support it. The mere suggestion that legislators wanted a comprehensive Act is not sufficient to overcome the presumption of severability that is implicit in the Alaska Airlines standard. We therefore reject the plaintiffs' severability arguments, and proceed to the arguments that Guam raises on appeal.
 
 B. Applicability of Roe v. Wade to Guam
 
 11
 Guam contends that the substantive due process guarantee enforced in Roe v. Wade and subsequent abortion cases does not apply to Guam because nothing in Guam's Organic Act, codified at 48 U.S.C. §§ 1421-1424b (1988), so provides. The plain language of the 1968 Mink Amendment to the Organic Act, codified at 48 U.S.C. § 1421b(u) (1988), belies their claim. The Mink Amendment states that:
 
 
 12
 The following provisions of and amendments to the Constitution of the United States are hereby extended to Guam ... and shall have the same force and effect there as in the United States or in any State of the United States: ... the first to ninth amendments inclusive; the thirteenth amendment; the second sentence of section 1 of the fourteenth amendment; and the fifteenth and nineteenth amendments.
 
 
 13
 48 U.S.C. § 1421b(u) (emphasis added). The Mink Amendment thus expressly extends to Guam the Due Process Clause of the Fourteenth Amendment, upon which the holding of Roe was founded.[4] See Roe v. Wade, 410 U.S. at 153, 93 S.Ct. at 726.
 
 
 14
 It may be true, as Guam argues, that the Supreme Court requires a clear indication of congressional intent before interpreting a congressional action as extending a right to the people of Guam. See Guam v. Olsen, 431 U.S. 195, 97 S.Ct. 1774, 52 L.Ed.2d 250 (1977). We can scarcely imagine, however, any clearer indication of intent than the language of the Mink Amendment: the relevant constitutional amendments "have the same force and effect" in Guam as in a state of the United States. There is no need, therefore, to go further. See Ngiraingas v. Sanchez, 495 U.S. 182, 186-87, 110 S.Ct. 1737, 1740, 109 L.Ed.2d 163 (1990) (resorting to legislative history only after determining that the statutory language was unclear). Accordingly, we hold that Roe v. Wade applies to Guam as it applies to the states.[5]
 
 
 15
 C. Prospective Relief Under 42 U.S.C. § 1983
 
 
 16
 Guam next argues that the plaintiffs cannot maintain this action against Governor Ada under 42 U.S.C. § 1983 because he is not a "person" within the meaning of that statute. We hold that he is a "person" when sued in his official capacity for prospective relief.
 
 
 17
 Section 1983 creates liability for "persons" who, while acting "under color" of state or territorial law, deprive citizens or other persons of rights, privileges, or immunities secured by the Constitution or federal law. 42 U.S.C. § 1983. In Ngiraingas v. Sanchez, 495 U.S. 182, 110 S.Ct. 1737, 109 L.Ed.2d 163 (1990), an action for damages, the Supreme Court held that territories are not "persons" within the meaning of § 1983. The Court also stated: "[p]etitioners concede, ... and we agree, that if Guam is not a person, neither are its officers acting in their official capacity." Id. at 192, 110 S.Ct. at 1743. Guam seizes upon this language. It contends that, because Governor Ada is being sued to prevent him from enforcing a statute of Guam, he is necessarily being sued in his official capacity. Therefore, Guam asserts, he cannot be considered a "person" subject to suit under section 1983.
 
 
 18
 Guam's argument overlooks the distinction between suits against governmental officials for damages, such as Ngiraingas, and those for injunctive relief. The distinction has been spelled out in cases involving state officials. Like territories, states are not "persons" for purposes of section 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58, 63-65, 109 S.Ct. 2304, 2307-08, 105 L.Ed.2d 45 (1989). In addition, state officers, when sued for damages in their official capacities, are likewise not "persons" within the meaning of 1983. Id. at 71, 109 S.Ct. at 2311. Any other conclusion would render meaningless the ruling that states are not "persons"; a judgment against a state official in his or her official capacity runs against the state and its treasury. Kentucky v. Graham, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985).
 
 
 19
 The rule is entirely different, however, when the suit is for injunctive relief. "Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' " Will, 491 U.S. at 71 n. 10, 109 S.Ct. at 71 n. 10 (quoting Kentucky v. Graham, 473 U.S. at 167 n. 14, 105 S.Ct. at 3106 n. 14); see Ex parte Young, 209 U.S. 123, 159-60, 28 S.Ct. 441, 454, 52 L.Ed. 714 (1908). We can see no reason why the same distinction between injunctive and damages actions against officials should not apply to a territory.
 
 
 20
 Guam attempts to distinguish Will by arguing that Guam is a "federal instrumentality" rather than a sovereign entity like a state. Because Congress maintains control over the Territory, Guam contends that there is no need to apply § 1983 to Guam or its officials.
 
 
 21
 Guam's argument proves too much. Under its approach, section 1983 would not apply at all in any territory--not even to municipalities or officials acting in their individual capacities. Such a result would totally nullify the provision of section 1983 imposing liability upon persons acting under color of law of "any State or Territory. " Accordingly, we conclude that Governor Ada, when sued as he is here in his official capacity for injunctive relief, is a person within the meaning of 42 U.S.C. § 1983.
 
 II
 
 22
 Having determined that the plaintiffs may maintain this action under section 1983, we turn to the substantive due process claim. Two issues arise: (1) whether Guam's Act violates the right of privacy protected by Roe v. Wade, and (2) whether subsequent Supreme Court decisions, particularly Webster v. Reproductive Health Services, 492 U.S. 490, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989), have so eroded Roe v. Wade that Roe cannot now be applied to invalidate Guam's Act.
 
 A. Validity of the Act under Roe v. Wade
 
 23
 The first issue is not hard to resolve. Guam's Act makes no attempt to comply with Roe. In Roe, the Supreme Court recognized that the right of privacy "is broad enough to encompass a woman's decision whether or not to terminate her pregnancy," and that for the state to deny this choice "may force upon the woman a distressful life and future," along with other harms. Roe, 410 U.S. at 153, 93 S.Ct. at 727. The Court further recognized that limitation of the woman's fundamental right of choice could be justified only by a "compelling state interest." Id. at 155, 93 S.Ct. at 728.
 
 
 24
 The Court in Roe rejected the state's argument, renewed by Guam here, that the state has a compelling interest in protecting fetal life from the moment of conception. Id. at 159, 93 S.Ct. at 729. Thus Roe recognized the superior right of choice by the woman during the first trimester of pregnancy, and her right during the second trimester limited only by the state's compelling interest in protecting her health. Id. at 163, 93 S.Ct. at 731. Only after the point of viability did the state's interest in fetal life become compelling and permit the state to proscribe abortion entirely. Id. at 163-64, 93 S.Ct. at 732.
 
 
 25
 The Guam Act gives not a nod toward Roe. With two narrow exceptions, it simply negates the rights and interests of the pregnant woman and forbids her to terminate her pregnancy from the moment of conception. It is difficult to imagine a more direct violation of Roe. Even the exceptions for abortion to save the mother's life or to prevent grave impairment to her health are hedged with crippling restrictions. The pivotal determination must be made by two physicians "who practice independently of each other"; they must make their determination "using all available means," and subject to subsequent review by a peer review committee. Act, 9 Guam Code Ann. § 31.20. Less cumbersome two-physician and peer review requirements were struck down by the Supreme Court in Doe v. Bolton, 410 U.S. 179, 199-200, 93 S.Ct. 739, 751, 35 L.Ed.2d 201 (1973), decided with Roe, and in Thornburgh v. American College of Obstetricians & Gynecologists, 476 U.S. 747, 768-71, 106 S.Ct. 2169, 2182-84, 90 L.Ed.2d 779 (1986).
 
 
 26
 If the core of Roe remains good law, then, the Act is clearly unconstitutional. Guam contends, however, that subsequent decisions have so eroded the analysis of Roe that Guam's Act should be held to be constitutional under the current state of the law. We now address that contention.
 
 
 27
 B. The Status and Applicability of Roe Today
 
 
 28
 Guam contends that Roe has no force after Webster v. Reproductive Health Services, 492 U.S. 490, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989). Putting Webster together with non-majority opinions in other cases, Guam contends that the classification of competing interests has changed. Guam relies particularly upon Justice O'Connor's dissents in Thornburgh v. American College of Obstetricians & Gynecologists, 476 U.S. at 814, 106 S.Ct. at 2206, and Akron v. Akron Center for Reproductive Health, Inc., 462 U.S. 416, 452, 103 S.Ct. 2481, 2504, 76 L.Ed.2d 687 (1983). According to Guam, five Justices of the Supreme Court now recognize the state's compelling interest in potential human life throughout pregnancy, and no longer adhere to the Roe analysis. In Webster, a three-Justice plurality stated that it did "not see why the State's interest in protecting potential human life should come into existence only at the point of viability." Webster, 492 U.S. at 519, 109 S.Ct. at 3057. It also characterized the woman's interest as a "liberty interest," as distinguished from a "fundamental right." Id. at 520, 109 S.Ct. at 3058. Guam would put these statements together with Justice Scalia's view that Roe should be overruled. Id. at 532, 109 S.Ct. at 3064. It would then add Justice O'Connor's view that regulations that do not impose an "undue burden" on a woman's right to seek an abortion are sustainable if rationally related to a legitimate state purpose. Id. at 529-30, 109 S.Ct. at 3062-63; Thornburgh, 476 U.S. at 828, 106 S.Ct. at 2214.[6] Finally, it would include Justice O'Connor's position elsewhere expressed that the state's compelling interest exists throughout pregnancy. See Akron, 462 U.S. at 459, 103 S.Ct. at 2507; Thornburgh, 476 U.S. at 828, 106 S.Ct. at 2214. From this mix, Guam derives the conclusion that its interest in fetal life can overcome the woman's right to choose whether to have an abortion, and that Guam's Act is therefore not unconstitutional on its face.
 
 
 29
 We reject Guam's construct. The bits and pieces assembled by Guam fall short of compelling us to do that which the Supreme Court itself has declined to do--overrule Roe v. Wade. In Webster, the Court modified Roe only to the extent necessary to uphold Missouri's requirement of testing for viability. Webster, 492 U.S. at 521, 109 S.Ct. at 3058. The plurality opinion stated that the case afforded no occasion to revisit Roe, "and we leave it undisturbed." Id. Justice O'Connor found no conflict between Missouri's statute and Roe, and similarly concluded that there was no need to reexamine Roe. Id. 492 U.S. at 525-26, 109 S.Ct. at 3060-61. Three dissenters opined that Roe survived Webster, although it was not secure. Id. at 537, 109 S.Ct. at 3067 (dissenting opinion of Justice Blackmun, joined by Justices Brennan and Marshall). Justice Scalia in his concurrence chastised the Court for failing to overrule Roe. Id. at 532, 109 S.Ct. at 3064. In the face of these pronouncements, it would be both wrong and presumptuous of us now to declare that Roe v. Wade is dead.[7]
 
 
 30
 We also have severe difficulty accepting the conclusions that Guam draws from the existing mosaic of decisions. In the first place, it is hard to see how Justice O'Connor's view helps Guam: surely an outright criminalization of abortion places an "undue burden" on the exercise of the woman's right.[8] Second, a view of the state's interest in potential life as "compelling" throughout pregnancy does not necessarily mean that it sweeps all other interests out of the way.[9] There is a countervailing right in issue here, although we find little reflection of it in Guam's briefs. No matter how it is characterized, the right of a woman not to be forced to endure a pregnancy and birth is an extremely important one. Pregnancy entails "profound physical, emotional, and psychological consequences." Michael M. v. Superior Court of Sonoma County, 450 U.S. 464, 471, 101 S.Ct. 1200, 1205, 67 L.Ed.2d 437 (1981). "Few decisions are more personal and intimate, more properly private, or more basic to individual dignity and autonomy, than a woman's decision--with the guidance of her physician and within the limits specified in Roe--whether to end her pregnancy." Thornburgh, 476 U.S. at 772, 106 S.Ct. at 2184. The individual's interest in exercising control over intimate personal decisions has been recognized in decades of Court precedent. See id.; Akron, 462 U.S. at 419, 103 S.Ct. at 2487; Roe, 410 U.S. at 167-70, 93 S.Ct. at 733-36 (Stewart, J., concurring); Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972). We would not lightly conclude that it could be overcome wholesale at any stage of pregnancy by Guam's interest in potential life.
 
 
 31
 The balancing of these vital individual interests against the state's interest in potential life is not an exercise in mathematics. These forces present a constitutional clash of the first order. Its outcome cannot be predetermined by adopting in the abstract various assembled characterizations of the interests at stake or formulae for weighing them. A more fundamental process is at work. Roe worked through that process and came to a result that has affected the lives and rights of millions of people. It is not for this court to discard that precedent.[10]
 
 III
 
 32
 The judgment of the district court permanently enjoining the enforcement of Guam's Public Law 20-134 is
 
 AFFIRMED.[11]
 
 
 [1]
 The final version of Guam Public Law 20-134 states:
 BE IT ENACTED BY THE PEOPLE OF THE TERRITORY OF GUAM:
 Section 1. Legislative findings. The Legislature finds that for purposes of this Act life of every human being begins at conception, and that unborn children have protectible interests in life, health, and well-being. The purpose of this Act is to protect the unborn children of Guam. As used in this declaration of findings the term "unborn children" includes any and all unborn offspring of human beings from the moment of conception until birth at every stage of biological development.
 Section 2. § 31.20 of Title 9, Guam Code Annotated, is repealed and reenacted to read:
 § 31.20. Abortion: defined. "Abortion" means the purposeful termination of a human pregnancy after implantation of a fertilized ovum by any person including the pregnant woman herself with an intention other than to produce a live birth or to remove a dead unborn fetus. "Abortion" does not mean the medical intervention in (i) an ectopic pregnancy, or (ii) in a pregnancy at any time after the commencement of pregnancy if two (2) physicians who practice independently of each other reasonably determine using all available means that there is a substantial risk that continuance of the pregnancy would endanger the life of the mother or would gravely impair the health of the mother, any such termination of pregnancy to be subsequently reviewed by a peer review committee designated by the Guam Medical Licensure Board, and in either case such an operation is performed by a physician licensed to practice medicine in Guam or by a physician practicing medicine in the employ of the government of the United States, in an adequately equipped medical clinic or in a hospital approved or operated by the government of the United States or of Guam.
 Section 3. § 31.21 of Title 9, Guam Code Annotated, is repealed and reenacted to read:
 § 31.21. Providing or administering drug or employing means to cause an abortion. Every person who provides, supplies, or administers to any woman, or procures any woman to take any medicine, drug, or substance, or uses or employs any instrument or other means whatever, with intent thereby to cause an abortion of such woman as defined in § 31.20 of this Title is guilty of a third degree felony. In addition, if such person is a licensed physician, the Guam Medical Licensure Board shall take appropriate disciplinary action.
 Section 4. § 31.22 of Title 9, Guam Code Annotated, is repealed and reenacted to read:
 § 31.22. Soliciting and taking drugs or submitting to an attempt to cause an abortion. Every woman who solicits of any person any medicine, drug, or substance whatever, and takes the same, or who submits to any operation, or to the use of any means whatever with intent thereby to cause an abortion as defined in § 31.20 of this Title is guilty of a misdemeanor.
 Section 5. A new § 31.23 is added to Title 9, Guam Code Annotated, to read:
 § 31.23. Soliciting to submit to operation, etc., to cause an abortion. Every person who solicits any woman to submit to any operation, or to the use of any means whatever, to cause an abortion as defined in § 31.20 of this Title is guilty of a misdemeanor.
 Section 6. Subsection 14 of Section 3107, Title 10, Guam Code Annotated, is repealed.
 Section 7. Abortion referendum. (a) There shall be submitted at the island-wide general election to be held on November 6, 1990, the following question for determination by the qualified voters of Guam, the question to appear on the ballot in English and Chamorro:
 "Shall that public law derived from Bill 848, Twentieth Guam Legislature (P.L. 20-, which outlawed abortion except in the cases of pregnancies threatening the life of the mother be repealed?["]
 In the event a majority of those voting vote "Yes," such public law shall be repealed in its entirety as of December 1, 1990.
 (b) There is hereby authorized to be appropriated to the Election Commission (the "Commission") sufficient funds to carry out the referendum described in this Section 7, including but not limited to the cost of printing the ballot and tabulating the results. In preparing the ballot, the Commission shall include in the question the number of the relevant public law.
 
 
 [2]
 The district court also held that Sections 4 and 5 of the statute, which make criminal the "soliciting" of abortions, violated the First Amendment. That ruling has not been appealed
 
 
 [3]
 The provision for a referendum did not delay the effective date of the Act. There is accordingly no issue of ripeness
 
 
 [4]
 The Mink Amendment also extends to Guam every other conceivable constitutional source of the right of privacy. See Roe, 410 U.S. at 152, 93 S.Ct. at 726 (sources relied on by the Court or individual Justices have included the First Amendment, the Fourth and Fifth Amendments, the penumbra of the Bill of Rights, the Ninth Amendment, and the Fourteenth Amendment)
 
 
 [5]
 Our disposition of this question on the basis of the Mink Amendment makes it unnecessary for us to address the further contention of the plaintiffs that the right of privacy-autonomy protected by Roe v. Wade qualifies as a "fundamental" constitutional right applicable to an unincorporated territory by its own force. See, e.g., Examining Board v. Flores de Otero, 426 U.S. 572, 599 n. 30, 96 S.Ct. 2264, 2280 n. 30, 49 L.Ed.2d 65 (1976) (only "fundamental" constitutional rights apply in unincorporated territory)
 
 
 [6]
 Guam also contends that Roe's requirement of a "compelling interest" on the part of the state was reduced to that of a "rational basis" in Ohio v. Akron Center for Reproductive Health, 497 U.S. 502, 110 S.Ct. 2972, 111 L.Ed.2d 405 (1990) (Akron II ), and Hodgson v. Minnesota, 497 U.S. 417, 110 S.Ct. 2926, 111 L.Ed.2d 344 (1990). Akron II and Hodgson dealt with minor women, however, and the Court has recognized that "the State has somewhat broader authority to regulate the activities of children than of adults." Planned Parenthood v. Danforth, 428 U.S. 52, 74, 96 S.Ct. 2831, 2843, 49 L.Ed.2d 788 (1976)
 
 
 [7]
 In its most recent abortion-related case, Rust v. Sullivan, --- U.S. ----, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991), the Supreme Court upheld certain federal regulations against a challenge that they violated a woman's due process right to choose whether to terminate her pregnancy. The Court held that the regulations dealing with activities of federally-funded programs did not violate Roe v. Wade. Id. 111 S.Ct. at 1777. It did not suggest that Roe v. Wade was no longer the law
 
 
 [8]
 Because Justice O'Connor's "undue burden" test is of no assistance to Guam, we need not decide what authoritative effect, if any, it must be given. See Planned Parenthood v. Casey, 947 F.2d 682, 687-98 (3d Cir.1991) (Justice O'Connor's standard is now the law of the land, cert. granted, --- U.S. ----, 112 S.Ct. 931, 117 L.Ed.2d 104 (1992))
 
 
 [9]
 There clearly must be limits to the ability of a state's interest in potential life, whether or not characterized as compelling, to override all conflicting interests. Potential human life exists in the ovum and sperm. See Webster, 492 U.S. at 565-66, 109 S.Ct. at 3082 (Stevens, J., concurring in part and dissenting in part). A state could maximize that potential by forbidding contraception, or even by requiring regular sexual intercourse by all fertile persons. The prospect is absurd, of course, because there are highly important constitutional rights that would be interfered with by such a measure
 
 
 [10]
 We find it unnecessary to address the plaintiffs' arguments that Guam's Act is void for vagueness and overbreadth. We also decline to address the plaintiffs' arguments based on the Establishment Clause, the Equal Protection and Due Process Clauses, the Eighth and Thirteenth Amendments, and comparable provisions of the Guam Bill of Rights, 48 U.S.C. § 1421b
 
 
 [11]
 The plaintiffs have requested attorneys' fees in connection with this appeal. They will be entitled to them if they ultimately prevail in this proceeding. 42 U.S.C. § 1988; see Hutto v. Finney, 437 U.S. 678, 692, 98 S.Ct. 2565, 2574, 57 L.Ed.2d 522 (1978). If the plaintiffs apply for fees in this court, we will transfer their application to the district court for a determination of the recoverable amount. In those proceedings, Guam will have the opportunity to contest the standing of the plaintiffs who are not health care providers, to the extent that that issue has any effect on recoverable fees
 Fees at the trial level were granted in a separate proceeding, separately appealable.