**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| REA MIALIZA O. PAESTE; JEFFREY F. PAESTE; SHARON M. ZAPANTA, GLENN ZAPANTA, individually and on behalf of all others similarly situated, | Nos. 13-15389 13-17515 14-16247 |
| *Plaintiffs-Appellees*, | D.C. No. 1:11-cv-00008 |
| v. | |
| GOVERNMENT OF GUAM; EDDIE BAZA CALVO, in his official capacity; BENITA MANGLOÑA, in her official capacity; JOHN CAMACHO, in his official capacity, | OPINION |
| *Defendants-Appellants*. | |

Appeal from the United States District Court
for the District of Guam
Consuelo B. Marshall, Senior District Judge, Presiding

Argued and Submitted
June 9, 2015—Honolulu, Hawaii

Filed August 26, 2015

Before: Kim McLane Wardlaw, Marsha S. Berzon,
and John B. Owens, Circuit Judges.

Opinion by Judge Berzon

## SUMMARY[*]

### Civil Rights

The panel affirmed the district court's summary judgment and permanent injunction in a class-action brought by Guam taxpayers against Guam and several of its officers in their official capacities alleging (1) that defendants violated the tax provisions of the Organic Act of Guam, 48 U.S.C. § 1421i, by failing timely to refund income tax overpayments, and (2) in a claim brought pursuant to 42 U.S.C. § 1983, that Guam's expedited tax refund program violated plaintiffs' equal protection rights.

On appeal, Guam challenged the taxpayers' equal protection claim as not cognizable under 42 U.S.C. § 1983, arguing that no defendant was a "person" within the meaning of § 1983 and that the challenged actions were not taken under "color of territorial law." Guam asserted that it could raise the definition of "person" for the first time on appeal because it implicated subject matter jurisdiction. The panel held that the question of whether a party is a person under § 1983 is not a jurisdictional question but rather a statutory one and therefore Guam's § 1983 arguments did not implicate subject matter jurisdiction. The panel, however, exercised its discretion to consider the arguments.

Determining that it was bound by *Guam Society of Obstetricians & Gynecologists v. Ada* , 962 F.2d 1366, 1371 (9th Cir. 1992), the panel held that the official-capacity

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

defendants were "persons" within the meaning of § 1983 for purposes of prospective relief. Addressing the merits, the panel held that the district court did not abuse its discretion in issuing a permanent injunction that required Guam to pay refunds within six months once it determined that the requests were valid and not subject to investigation or audit. The panel held that the six-month provision was well-supported and within the court's broad discretion in fashioning relief. The panel noted that Guam raised no substantive challenge to the district court's holding that Guam violated equal protection, nor to its holding that Guam violated the Organic Act.

## COUNSEL

William N. Hebert (argued), Kathleen V. Fisher, and Genevieve P. Rapadas, Calvo Fisher & Jacob LLP, San Francisco, California for Defendants-Appellants.

David Stein (argued), Daniel C. Girard, and Amanda M. Steiner, Girard Gibbs LLP, San Francisco, California; Ignacio Cruz Aguigui, Lujan Aguigui & Wolff LLP, Hagåtña, Guam, for Plaintiffs-Appellees.

**OPINION**

BERZON, Circuit Judge:

Like many state, local, and territorial jurisdictions, Guam has struggled for years with chronic budget deficits. Guam settled on a unique solution to its financial problems: It refused to refund over-withheld income taxes, using the money to fund government spending. Confronted with meritorious and uncontested claims for tax refunds, Guam did not issue the refunds, often for several years at a time.

Apparently recognizing that some Guam taxpayers desperately needed their excess tax payments — to which the Guam government has no legal claim — Guam established an "expedited refund" process. Purportedly, taxpayers facing, for example, medical or funeral expenses, would move to the front of the line and be granted refunds without waiting for Guam to make good on the huge backlog of claims. In practice, the expedited refund process was effectively standardless, and it devolved into arbitrariness and favoritism.

A group of Guam taxpayers brought this class-action suit against Guam and several of its officers in their official capacities. The taxpayers alleged that Guam violated the tax provisions of the Organic Act of Guam, 48 U.S.C. § 1421i, by failing timely to refund overpayments, and, via a claim brought under 42 U.S.C. § 1983, the taxpayers also challenged the arbitrary expedited refund program as a violation of equal protection.

The district court granted summary judgment to the taxpayers on both claims, entered a permanent injunction both ending the expedited refund program and requiring

Guam to pay approved refunds in a timely manner, and awarded substantial attorney's fees and costs. Guam challenges the district court's orders on a number of grounds. We affirm.

I.

Taxpayers Rea Mializa Paeste, Jeffrey Paeste, Sharon Zapanta, and Glenn Zapanta, on behalf of a class of Guam taxpayers (collectively, "the Taxpayers"), brought this suit against Guam, along with the Governor, the Director of the Department of Revenue and Taxation, and the Director of the Department of Administration of Guam in their official capacities (collectively, "Guam"), challenging systematic delay and unfairness in Guam's handling of income tax refunds. The Taxpayers asserted one claim, against all the defendants, under the Organic Act of Guam, 48 U.S.C. § 1421i;[1] and another, against all but Guam itself, under 42 U.S.C. § 1983, alleging a violation of the Equal Protection Clause of the Fourteenth Amendment, extended to Guam by 48 U.S.C. § 1421b(u).[2]

---

[1] "Congress organized Guam as an unincorporated possession of the United States through the 1950 Organic Act of Guam" and "provided an income tax scheme for Guam in 48 U.S.C. § 1421i." *Gumataotao v. Dir. of Dep't of Revenue & Taxation*, 236 F.3d 1077, 1079 (9th Cir. 2001).

[2] 48 U.S.C. § 1421b(u) provides: "The following provisions of and amendments to the Constitution of the United States are hereby extended to Guam to the extent that they have not been previously extended to that territory and shall have the same force and effect there as in the United States or in any State of the United States: . . . the second sentence of section 1 of the fourteenth amendment," which includes the equal protection clause. *See also* 48 U.S.C. § 1421b(n) ("No discrimination shall be made in Guam against any person on account of race, language, or religion, nor shall the equal protection of the laws be denied.");

The district court granted a motion for class certification.[3] After discovery, the court granted the Taxpayers' motion for summary judgment as to both claims. It issued findings of fact and conclusions of law in support of its grant of summary judgment.

The district court's findings of fact, which Guam does not challenge on appeal, paint a troubling picture of Guam's tax-refund practices. Guam has, "[s]ince the early 1990s, . . .

---

*Attorney Gen. of Territory of Guam ex rel. All U.S. Citizens Residing in Guam Qualified to Vote Pursuant to Organic Act v. United States*, 738 F.2d 1017, 1018 (9th Cir. 1984). Because the Taxpayers relied on this statutory equal protection guarantee, we express no view as to the direct applicability of constitutional equal protection. *Cf. Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero*, 426 U.S. 572, 599–601 (1976) (holding that a Puerto Rico statute violated equal protection); *Wabol v. Villacrusis*, 958 F.2d 1450, 1460 n.19 (9th Cir. 1990) (indicating that "not every right subsumed within the [equal protection] clause can ride the fundamental coattails of [equal protection] into the territories"). We do note, however, that the so-called "Insular Cases," which established a less-than-complete application of the Constitution in some U.S. territories, has been the subject of extensive judicial, academic, and popular criticism. *See, e.g.*, Juan Torruella, The Insular Cases: The Establishment of a Regime of Political Apartheid, 77 Rev. Jur. U.P.R. 1 (2008); *Last Week Tonight with John Oliver*: *U.S. Territories*, Youtube (Mar. 8, 2015), https://www.youtube.com/watch?v=CesHr99ezWE.

[3] The class certified was defined, in relevant part, as:

> All persons and entities who have filed or will file a claim for refund of an overpayment of the Guam Territorial Income Tax: (i) which the Government of Guam has processed or will process and deemed valid; (ii) who have met the procedural requirements outlined in 26 U.S.C. §§ 7422(a) and 6532(a); and (iii) who nonetheless have not received or will not receive their refund six months after filing the claim for refund.

financed chronic budget deficits by regularly delaying the payment of [Guam income tax] refunds to its taxpayers" such that "many . . . refunds [were] not paid in a timely manner" and "during [some] periods, no refunds were paid to any one." Guam failed timely to pay refunds even after Guam's Legislature enacted two separate statutes requiring that money be set aside for that purpose.

"Traditionally, the Government of Guam has paid [income tax] refunds in a first-in, first-out order, the same way the Internal Revenue Service ordinarily pays federal income tax refunds."[4] But, in light of the chronic delays, for years Guam paid some refunds on an "expedited" basis, out of the chronological order otherwise applicable. The expedited refund process was not governed by any "formal rule-making process or any regulations," — nor, it appears, any consistently followed set of standards. The result was starkly unequal treatment of refund requests.

The director of the Department of Revenue and Taxation ("DRT") testified, for example, that the reasons taxpayers offered for requesting expediting returns were ranked, from medical needs as the most serious to financial hardship as the least. In reality, however, "[w]hile taxpayers experiencing medical emergencies [were] often unable to obtain expedited refunds, other taxpayers with less urgent [financial] needs receive[d] their refunds on an expedited basis." Indeed, "the greatest number of refunds [was] paid to DRT's 'catch-all' category of 'financial' hardship" despite it purportedly being "the lowest priority."

---

[4] The IRS generally issues the vast majority of its refunds within twenty-one days, including some 90% in 2012.

The process was also opaque and tedious.  Guam did not "formally approve or reject requests for expedited refunds," so some taxpayers stood in line at DRT's offices day after day to check on the status of their refund requests.  In practice, to obtain an expedited refund, a taxpayer would often need to "persuade one of a series of public officials to include his or her name on a list," given to DRT, resulting in expedited refunds for those with the right political connections.  DRT employees also successfully expedited their own refunds, and those of family and friends, often without filling out the purportedly required form, submitting supporting documentation, or visiting the DRT.  Similarly, the named plaintiffs' refunds were expedited, even though they submitted no requests for expedited treatment, in an apparent attempt to render this case moot.

Based on these facts, the district court concluded that the Taxpayers were entitled to summary judgment on both claims.  It also entered a permanent injunction prohibiting Guam from operating its expedited refund program.  The injunction further provided that, as to any refund claim that contained no material errors and was not subject to an audit or other investigation, "the Government of Guam shall pay the corresponding refund no later than six months after the filing of the claim for refund or six months from the due date for filing the claim for refund, whichever is later . . . ."[5]

---

[5] Since the injunction was entered, Guam has apparently timely paid all refunds.

Finally, the court awarded substantial attorney's fees and costs to the Taxpayers.**[6]**

These consolidated appeals followed.

## II.

Guam challenges the Taxpayers' equal protection claim as not cognizable under § 1983, which provides:

> Every *person* who, *under color of* any statute, ordinance, regulation, custom, or usage, of any State or *Territory* or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (emphases added). Guam contends that no defendant is a "person" within the meaning of § 1983, and that the challenged actions were not taken "under color of" territorial law. Guam is wrong.

---

**[6]** Guam's challenges to the award of attorney's fees and costs are addressed in a memorandum disposition filed concurrently with this opinion.

A.

The Taxpayers contend that both of Guam's arguments regarding § 1983 are waived, as they were not raised before the district court until long after judgment was entered on the merits.[7] *See Dream Palace v. Cnty. of Maricopa*, 384 F.3d 990, 1005 (9th Cir. 2003). Guam responds that at least the definition of "person" may be raised for the first time on appeal as it implicates subject matter jurisdiction, and, in the alternative, that the court should exercise its discretion to reach the § 1983 arguments.

Three circuits have held that "whether [a party] is a 'person' under § 1983 is not a jurisdictional question" but rather "a statutory one." *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1105 (D.C. Cir. 2005); *accord Barker v. Goodrich*, 649 F.3d 428, 433 n.1 (6th Cir. 2011); *Bolden v. Se. Pa. Transp. Auth.*, 953 F.2d 807, 821 (3d Cir. 1991) (en banc). We agree and so hold.

Whether the defendant is a "person" within the meaning of the statute is "a necessary inquiry for the purposes of

---

[7] In opposing taxation of costs, Guam eventually did argue to the district court that the Taxpayers' claims were under color of federal law rather than territorial law. The territory now contends that raising this argument before the district court in the context of taxation of costs was sufficient to avoid waiver. We disagree. Guam filed three notices of appeal, consolidated by this court: one as to the court's summary judgment order and permanent injunction, another as to attorney's fees, and a third as to costs. The "under color" argument was made to the district court only *after* Guam filed its opening brief with this court as to the summary judgment and permanent injunction issues, which included its § 1983 arguments. An argument made after final judgment on the merits as to a derivative costs matter is not a timely presentation of a challenge to the § 1983 claim.

establishing the essential elements of [a] § 1983 claim." *Pistor v. Garcia*, 791 F.3d 1104, 1114 (9th Cir. 2015). But, as a general matter, "the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998); *see also Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 642–43 (2002) (same). Here, the Taxpayers' § 1983 claim, including their contention that the defendants are "persons" within the meaning of the statute, was not "made solely for the purpose of obtaining jurisdiction or . . . wholly insubstantial and frivolous." *Steel Co.*, 523 U.S. at 89 (internal quotation marks omitted). Indeed, that claim was not only arguable but, as the district court held, actually meritorious. Thus, Guam's statutory argument does not implicate subject matter jurisdiction. "Recharacterizing an issue of statutory interpretation as 'jurisdictional' is mere wordplay." *Settles*, 429 F.3d at 1105.

Nor, as Guam contends, is there a circuit split on this question. Both Seventh Circuit cases on which Guam relies as holding to the contrary grounded their jurisdictional holdings on Eleventh Amendment sovereign immunity. *See Sherman v. Cmty. Consol. Sch. Dist. 21*, 980 F.2d 437, 441 (7th Cir. 1992) (concluding that a suit against a state official was "an effort to obtain a judgment binding the State of Illinois as an entity" and therefore barred by the Eleventh Amendment); *Toledo, Peoria & W. R. Co. v. State of Ill., Dep't of Transp.*, 744 F.2d 1296, 1298-99 (7th Cir. 1984) (relying on state sovereign immunity in concluding that "[t]his section 1983 action against . . . a state agency[] fails for lack of federal court jurisdiction"). While the statutory definition of "person" is "[s]imilar to and often conflated with Eleventh Amendment immunity," the concepts are distinct. *Barker*, 649 F.3d at 433 n.1. There is no circuit split as to the

non-jurisdictional nature of the statutory question "when stripped of its Eleventh Amendment component." *Bolden*, 953 F.2d at 821.

Guam does not contend that it is entitled to Eleventh Amendment immunity, but does assert *federal* sovereign immunity, arguing that it is entitled to immunity to the same extent accorded the federal government. This argument is also unavailing.

Even if Guam enjoys sovereign immunity, of whatever sort, from the Taxpayers' § 1983 claim, that claim was not brought against Guam itself, but only against its officers in their official capacities, and only for declaratory and injunctive relief.[8] Under the principle of *Ex parte Young*, 209 U.S. 123 (1908), "official-capacity actions for prospective relief are not treated as actions against" Guam itself. *Guam*

---

[8] We express no view as to Guam's entitlement to sovereign immunity from the § 1983 claim in this case. *Compare Marx v. Gov't of Guam*, 866 F.2d 294, 297–98 (9th Cir. 1989) (holding that Guam enjoys common-law sovereign immunity) *with Fleming v. Dep't of Pub. Safety,* 837 F.2d 401, 408 (9th Cir. 1988) (holding that the Commonwealth of the Northern Mariana Islands "lacks eleventh amendment immunity and . . . in the Covenant [establishing the Commonwealth] it waived any common law sovereign immunity from federal suit it might otherwise have possessed"), *abrogated on other grounds as recognized in DeNieva v. Reyes*, 966 F.2d 480, 483 (9th Cir. 1992); *see also Ngiraingas v. Sanchez*, 495 U.S. 182, 192 n.12 (1990) ("*Ngiraingas II*") (declining to address whether Guam was entitled to Eleventh Amendment immunity from a § 1983 suit); *id*. at 202–06 (Brennan, J., dissenting) (concluding that the Eleventh Amendment does not apply to Guam, and that whatever common-law immunity Guam enjoys grants it no immunity from suit under federal law in federal court); *see generally* Adam D. Chandler, Comment, *Puerto Rico's Eleventh Amendment Status Anxiety*, 120 Yale L.J. 2183 (2011) (surveying the caselaw regarding territorial sovereign immunity).

*Soc. of Obstetricians & Gynecologists v. Ada*, 962 F.2d 1366, 1371 (9th Cir. 1992) (internal quotation marks omitted).

In sum, Guam's § 1983 arguments do not implicate subject-matter jurisdiction. Thus, our ordinary practice applies, under which we typically "decline to consider arguments raised for the first time on appeal." *Dream Palace*, 384 F.3d at 1005. "We have, however, laid out several narrow exceptions to the rule — among them, the case in which the issue is purely one of law, does not affect or rely upon the factual record developed by the parties, and will not prejudice the party against whom it is raised." *Id.* (internal quotation marks omitted). Under this exception, we exercise our discretion to consider Guam's § 1983 arguments.[9]

## B.

*Guam Society of Obstetricians & Gynecologists v. Ada* held that a Guam officer sued in his official capacity *is* a "person" within the meaning of § 1983. 962 F.2d at 1370–71. Guam's arguments to the contrary are meritless.

Two years before we decided *Ada*, *Ngiraingas II* held that "neither the Territory of Guam nor its officers acting in their official capacities are 'persons' under § 1983." 495 U.S. at 192. Nearly all of the Supreme Court's analysis addressed whether Guam itself was a "person," concluding, based principally on § 1983 legislative history, that it was not. *See id.* at 187–92. But the plaintiffs in that case had also sued

---

[9] Because we find Guam's contentions meritless, the Taxpayers will suffer no prejudice as a result of Guam's failure to raise these matters before the district court.

several Guam officials in their official capacities *for damages*. *Id*. at 184. The Supreme Court noted the conclusions of the district court and this court that "because a judgment against those defendants in their official capacities would affect the public treasury, the real party in interest was the Government of Guam." *Id*. at 184–85. The Court's own analysis as to the officials was limited to the following: "Petitioners concede, and we agree, that if Guam is not a person, neither are its officers acting in their official capacity." *Id*. at 192 (citation omitted).

Two years later, *Ada* held that a Guam official "is a 'person' when sued in his official capacity for prospective relief." 962 F.2d at 1370. *Ada* binds us, and *Ngiraingas II*, an earlier-decided Supreme Court decision, offers no basis for us, as a three-judge panel, to reconsider *Ada*. *See Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc).

Even if we could revisit *Ada*, we would decide the issue in accord with that case. *Ada* acknowledged the general statement as to Guam officers in *Ngiraingas II*, but pointed out the established "distinction between suits against governmental officials for damages, such as *Ngiraingas*, and those for injunctive relief." *Id*. at 1371. As *Ada* noted, "state officers, when sued for damages in their official capacities, are," like states, "not 'persons' within the meaning of [§] 1983," because "a judgment against a state official in his or her official capacity runs against the state and its treasury." *Id*. (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63–65 (1989); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). But, as *Ada* explained, the "rule is entirely different" with regard to prospective relief, which does *not* run directly against the state's treasury; suits for such relief "are not treated as actions against the State." *Id*. (internal quotation

marks omitted).  The court concluded: "We can see no reason why the same distinction between injunctive and damages actions against officials should not apply to a territory."  *Id.*[10]

There is, indeed, no reason why these established principles, applicable to states, should not apply to territories as well.  *Accord McCauley v. Univ. of Virgin Islands*, 618 F.3d 232, 240–41 (3d Cir. 2010) (citing *Will*, 491 U.S. at 71 n.10; *Brow v. Farrelly*, 994 F.2d 1027, 1037 n.12 (3d Cir. 1993), *as amended* (May 26, 1993)); *see also Playboy Enter., Inc. v. Pub. Serv. Comm'n of Puerto Rico*, 906 F.2d 25, 31 n.8 (1st Cir. 1990) (concluding that *Ngiraingas II* did not foreclose § 1983 liability, in part because the plaintiffs sought only injunctive relief); *cf. Pistor*, 791 F.3d at 1112 (noting that *Graham*'s "same principles fully apply" in the context of Indian tribes).  *Ngiraingas II* did not, it is true, expressly state that the prospective-relief exception applies to official-capacity suits against territorial officers.  But that silence indicates little; the Court did not address prospective relief at all, because the plaintiffs sought none.  *See* 495 U.S. at 184.  Particularly given the cursory treatment of the official-capacity defendants in that case, and the plaintiffs' concession there that the same rule would apply to both Guam and the official-capacity defendants, we do not read *Ngiraingas II* to establish markedly different treatment of official-capacity suits as between states and territories.

---

[10] Guam's suggestion that *Ada* was wrong because the *Ex Parte Young* principle applies only to suits against state officers is baseless.  *See Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015) (noting that "federal courts may in some circumstances grant injunctive relief" under the *Ex parte Young* principle "not only with respect to violations of federal law by state officials, but also with respect to violations of federal law by federal officials").

Guam puts forward another theory as to why *Ada* is not binding — that it is inconsistent with *Ngiraingas v. Sanchez*, 858 F.2d 1368 (9th Cir. 1988) ("*Ngiraingas I*"), the case reviewed by the Supreme Court in *Ngiraingas II*. *Ngiraingas I* concluded that Guam "'is in essence an instrumentality of the federal government,' much like a federal department or administrative agency," and so "Guam, like the federal government, should not be held liable on the same terms as other entities." *Id*. at 1370–71 (citation omitted) (quoting *Sakamoto v. Duty Free Shoppers, Ltd.*, 764 F.2d 1285, 1286 (9th Cir. 1985)).[11] Thus, we held, Guam itself was not a "person" within the meaning of § 1983. *Id*. at 1372 (internal quotation marks omitted).

In reliance on *Ngiraingas I*, Guam now argues that its officers should be treated in the same way as federal officers for the purposes of § 1983. Section 1983 "provides no cause of action against federal agents acting under color of federal law." *Billings v. United States*, 57 F.3d 797, 801 (9th Cir. 1995). But *Ngiraingas I* is unhelpful to Guam for several reasons.

First, if there really were an irreconcilable conflict in our caselaw, "we could not simply pick one [case] to follow — we would be required to call this case en banc." *United States v. Torre-Jimenez*, 771 F.3d 1163, 1167 (9th Cir. 2014) (citing *Atonio v. Wards Cove Packing Co.*, 810 F.2d 1477, 1478–79 (9th Cir. 1987) (en banc)); *see also United States v.*

---

[11] Guam also relies on *Sakamoto*. But the relevant portion of *Sakamoto* held only that Guam was entitled to immunity from antitrust law, did not involve § 1983 or the meaning of "person," and is not pertinent here outside of *Ngiraingas I*'s reliance upon it. 764 F.2d at 1286, 1288–89.

*Washington*, 593 F.3d 790, 798 n.9 (9th Cir. 2010) (en banc).[12]

Second, the portion of *Ngiraingas I* on which Guam relies is almost surely no longer binding precedent. Although *Ngiraingas II* affirmed *Ngiraingas I*'s holding that Guam is not a "person" under § 1983, it did so on an entirely different rationale. *See Ngiraingas II*, 495 U.S. at 185, 187–92. The dissent in *Ngiraingas II* understood the majority opinion in *Ngiraingas II* as rejecting our "conclusion that Guam is outside the coverage of § 1983 because it is an instrumentality of the Federal Government," observing that our interpretation was "flatly inconsistent" with the statute's manifest intent that at least natural persons *could* be held liable for acts under color of territorial law. 495 U.S. at 204 n.10 (Brennan, J., dissenting); *see also Ada*, 962 F.2d at 1371.

Finally, there is a third reason that the argument based on *Ngiraingas I* does not avail Guam. *Ngiraingas I*'s analysis of official-capacity suits is not inconsistent with *Ada*. The portion of *Ngiraingas I* on which Guam relies is its analysis as to whether *Guam* was a "person," not as to whether its officials were. As to the officials sued in that case, we relied,

---

[12] Guam suggests that, if there were an irreconcilable conflict, the proper course would be to follow the earlier-decided case, relying on *United States v. Rodriguez-Lara*, 421 F.3d 932, 943 (9th Cir. 2005), *overruled on other grounds by United States v. Hernandez-Estrada*, 749 F.3d 1154 (9th Cir. 2014). Not so. *Rodriguez-Lara* did approvingly cite *H & D Tire & Automotive-Hardware, Inc. v. Pitney Bowes Inc.*, 227 F.3d 326, 330 (5th Cir. 2000), which noted that "[w]hen panel opinions appear to conflict," panels of the Fifth Circuit follow "the earlier opinion." But we do not follow the Fifth Circuit's rule, and we do not understand *Rodriguez-Lara* to have jettisoned the rule established by our en banc court in *Wards Cove* with a "*see also*" citation.

as the Supreme Court noted, *Ngiraingas II*, 495 U.S. at 185, on the established doctrine that "a suit where the relief sought would affect the public treasury and public administration[] is deemed to be a suit against the government itself" in holding that "the individual defendants acting in their official capacities [were] not amenable to suit under section 1983," *Ngiraingas I*, 858 F.2d at 1372. In other words, *Ngiraingas I*'s holding as to the official-capacity defendants was explicitly predicated on the fact that the suit was one seeking damages. *Ada* recognized the rule precluding suits for damages against officials in their official capacities, but also recognized the established, contrary principle applicable to suits seeking prospective relief. 962 F.2d at 1371.

In sum, the official-capacity defendants in this case are "persons" within the meaning of § 1983 for purposes of prospective relief.

## C.

Guam next argues that none of the conduct at issue in this case was undertaken under color of territorial law. The Organic Act, which established Guam's territorial income tax, is, indeed, a federal statute passed by Congress and signed by the President. *See* 48 U.S.C. § 1421i. Section 1421i establishes, with some exceptions not important in this case, a Guam tax code "mirroring the provisions of the federal" Internal Revenue Code, another federal statute, and delegates enforcement and collection authority to Guam officials. *Bank of Am., Nat. Trust & Sav. Ass'n v. Chaco*, 539 F.2d 1226, 1227-28 (9th Cir. 1976) (per curiam); *see also Gumataotao*, 236 F.3d at 1079–81; *Sayre & Co. v. Riddell*, 395 F.2d 407, 410 (9th Cir. 1968) (en banc). How, Guam

asks, could the implementation of two federal statutes constitute action under color of *territorial* law?

At the outset, we note some confusion regarding the extent to which the Taxpayers rely on § 1983. In its briefing, Guam asserted that both the claims in this case were brought under § 1983; the oral argument suggested confusion on this score. The complaint is quite clear, however, that only the equal protection claim is asserted under § 1983, and the district court was even clearer: "Plaintiffs' first cause of action . . . is for violation of the Organic Act of Guam, 48 U.S.C. § 1421i," while "Plaintiffs' second cause of action . . . is under 42 U.S.C. § 1983 for violation of the Equal Protection Clause." The district court was right — only the equal protection claim was asserted under § 1983.

This clarification goes a long way towards answering Guam's argument. The equal protection claim brought under § 1983 is that Guam officials established an expedited refund process that was so standardless and arbitrary that it violated principles of equal protection. That process was not established by Congress and signed by the President; it is not mentioned in the Organic Act or the Internal Revenue Code. It was created and administered entirely by Guam officials. Those officials used the power vested in them by virtue of their position as territorial officers to authorize or refuse refunds of tax overpayments collected by Guam, held by Guam, and obliged to be refunded by Guam. No officer or agency of the federal government was involved at any point.

Moreover, even if implementation of a federal law (other than the Constitution) did in some sense underlay the § 1983 claim, that circumstance would not alter our conclusion that the defendants acted under color of territorial law. "The

traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). "Thus, generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id*. at 50; *see also Naffe v. Frey*, 789 F.3d 1030, 1036 (9th Cir. 2015).

We recognize that suits against territorial officers are importantly different from those against state officers. Because territories are organized under federal law, *see* U.S. Const. art. IV, § 3, cl. 2, the actions of territorial officers are always, in *some* sense, under color of federal law. But that cannot be, and is not, the sense in which that term is used in § 1983. Section 1983 does not generally authorize challenges to actions taken under color of federal law, but it does, expressly, contemplate suits for violations of federal rights under color of territorial law. *See District of Columbia v. Carter*, 409 U.S. 418, 424-25 (1973) (noting that, "*with the exception of the Territories*, actions of the Federal Government and its officers are at least facially exempt from [§ 1983's] proscriptions" (emphasis added)) (footnote omitted); *Ada*, 962 F.2d at 1371. So the same general principles apply to the interpretation of "under color" in cases involving territorial officers as apply in cases involving state officers. Otherwise, the inclusion of "Territory" in § 1983 would be rendered largely nugatory.

All of the § 1983 defendants in this case were *territorial* officers, accused of administering the expedited refund program while acting in their official capacities, or, in other

words, using "power possessed by virtue of [territorial] law and made possible only because [they were] clothed with the authority of [territorial] law." *West*, 487 U.S. at 49 (internal quotation marks omitted).[13]   For that reason, *Williams v. United States*, 396 F.3d 412 (D.C. Cir. 2005), on which Guam relies, undercuts its argument.   *Williams* held that the defendant's conduct was not undertaken under color of District of Columbia law, even though he had arrested the plaintiff for a violation of District of Columbia law, because he was "a federal official, not a D.C. official" and "the District of Columbia had no authority over him and thus did not exercise coercive power through him."   *Id*. at 415 (internal quotation marks and alteration omitted).   In other words, while the officer applied and effectuated District of Columbia law, he was still, as a federal official, acting under color of federal law.   Here, the opposite is the case.   The defendants are, and acted as, Guam officers, not officers of the federal government, and so, even if they were effectuating federal law, they were acting under color of territorial law.

Guam argues otherwise, maintaining that the particular contours of Congress's delegation to Guam officials of authority to administer Guam's income tax, *see Chaco*, 539 F.2d at 1227, indicates that the defendants were in reality acting under color of federal law.   We see no basis for establishing a special carve-out limited to the relationship between Congress and Guam officials established by the tax provisions at issue here.   Our caselaw indicates that these

---

[13] While this case, unlike *Ada*, does not challenge the enforcement of a territorial statute, *see* 962 F.2d at 1368, § 1983 refers as well to an "ordinance, regulation, custom, or usage," thereby expressing a conception of action under color of territorial (or state) law broader than one limited only to statutes.   42 U.S.C. § 1983.

defendants would be properly sued under § 1983 even if the actions they took as territorial officers were *required* by federal law.

In *Tongol v. Usery*, 601 F.2d 1091 (9th Cir. 1979), a class of plaintiffs sued the federal Secretary of Labor and three California state defendants, seeking to invalidate a regulation promulgated by the Secretary that required state officials to recover overpayments of unemployment benefits despite state laws permitting waiver of such recoupment. *Id*. at 1094. The district court invalidated the regulation, and we affirmed. *Id*. at 1095–96. The district court held, however, that attorney's fees were not available under 42 U.S.C. § 1988 for the plaintiffs' claim under § 1983, because the suit attacked a federal regulation, and the state, through the official-capacity defendants, was "simply implementing the federal regulations as it was obliged to do." *Id*. at 1096–97 (internal quotation marks omitted). We disagreed.

The "under color" requirement of § 1983, we held in *Tongol*, was satisfied even though the regulation implemented was federal. "[T]he relevant inquiry focuses not on whose law is being implemented, but rather on whether the authority of the state was exerted in enforcing the law." *Id*. at 1097. "The state officials who sought to recover these . . . overpayments were empowered to act only by virtue of their authority under state law," and so "were acting 'under color of state law' within the meaning of section 1983." *Id.*

Similarly here, even if the territorial officials had been obliged by federal law to institute the arbitrary expedited refund process — which they most certainly were not — they were empowered to act only in their capacities as territorial

officers.  Thus, they were acting under territorial law within the meaning of § 1983.[14]

### III.

We arrive, finally, at Guam's only challenge to the district court's merits decisions.[15]  Guam challenges one particular provision of the district court's permanent injunction, the requirement that Guam pay refunds within six months once Guam determines that the requests are valid and not subject to investigation or audit.  According to Guam, that requirement is grounded in a legal error.  We review the district court's legal conclusions underlying the injunction de novo and the scope of the injunction for abuse of discretion. *Armstrong v. Brown*, 768 F.3d 975, 979 (9th Cir. 2014).

The district court stated in its conclusions of law that "the provisions of the Internal Revenue Code applicable on Guam generally require Defendants to pay refunds to taxpayers no later than six months after the filing date of the corresponding claims for refund," a legal conclusion Guam contends is

---

[14] Nor do we think, as Guam suggests, that our decision today undercuts our cases interpreting and applying the tax provisions of the Organic Act. We are not interpreting those provisions, but simply applying the settled meaning of § 1983.  Furthermore, to the extent that, as Guam contends, territorial residents may have greater access to attorney's fees under § 1988 than those who challenge similar tax practices by the federal government, that is a product of Congress's choice to include those acting under color of territorial law, but not those otherwise acting under color of federal law, within the scope of § 1983.

[15] Guam has raised no substantive challenge to the district court's holding that Guam violated equal protection, nor to its holding that Guam violated the Organic Act by failing to "set[] aside revenues as needed to refund overpayments and pay[] the refunds owed to Guam taxpayers."

wrong.    In support of the six-month deadline in the injunction, the district court provided the following analysis: "Under the Internal Revenue Code, a taxpayer can sue to recover his or her refund six months after its filing date, 26 U.S.C. § 6532(a)(1), signifying that a taxpayer's right to a refund vests at that time, unless there is an offset, audit, or some other administrative reason that justifies continued withholding of the payment."

Section 6532(a)(1) provides, in relevant part:

> No suit or proceeding under [26 U.S.C. §] 7422(a) for the recovery of any internal revenue tax, penalty, or other sum, shall be begun before the expiration of 6 months from the date of filing the claim required under such section unless the Secretary renders a decision thereon within that time . . . .

26 U.S.C. § 6532(a)(1). As Guam points out, § 6532(a)(1) is, on its face, a limitation, prohibiting suits until six months have elapsed; it does not state directly when the IRS must provide refunds within that period.    The district court recognized as much.    Guam challenges the six-month provision of the injunction as impermissibly based on an interpretation of § 6532(a)(1) as something more than a requirement that a request for a refund pend for the requisite period before a suit seeking a tax refund can be filed in court.

We need not decide whether the district court's statements, if so understood, would constitute legal error. Our question here is solely whether the district court's inclusion in the injunction of a six-month deadline for paying refunds was an abuse of its discretion.    To decide that

question, we consider that provision in the context of the totality of the district court's articulated concerns, as expressed during the summary judgment hearing.

In discussing the Organic Act claim at the hearing, the Taxpayers suggested that an injunction should require Guam to pay refunds "in a timely manner" and "in an ordinary course." The court expressed concern that an injunction including a vague limitation "to the effect [of] 'a reasonable time period' or 'in due course,'" would "just bring another lawsuit because there's no guidance being given as to a time frame for" disbursing refunds. The Taxpayers agreed that was a "fair point" and suggested that "it's fairly evident from the Internal Revenue Code[,] which allows a taxpayer to file a lawsuit to [sic] their refund after six months, that the corollary to that is that once six months has passed, they have a right to their refunds" and "[s]o if the Court is interested in setting a time period, that would certainly be one which makes sense to us."

This colloquy indicates that the district court included the six-month pendency period of § 6532(a)(1) only as a benchmark for a reasonable time limitation, and included that time period in the injunction to give sufficient specificity for enforcement purposes. Understood in this light, the six-month provision of the district court's injunction was well-supported. Section 6532(a)(1) is certainly indicative of Congress's expectation that six months is a sufficient period for administrative processing of a valid claim for a tax refund. And a reasonable time limitation was amply justified by Guam's chronic failure to pay refunds, sometimes for years, and the court's concern that an indefinite injunction would only spark new litigation. Such a limitation was well within the court's broad discretion in fashioning relief. *See State of*

*Cal. Dep't of Soc. Servs. v. Thompson*, 321 F.3d 835, 857 (9th Cir. 2003).

Guam contends that, even apart from the purported legal error, the six-month period was simply too short, and unjustifiably tied Guam's hands in administering its budget. More broadly, Guam suggests that, under the Internal Revenue Code and the Organic Act, it has the power to defer refund payments for its own budgetary purposes for as long as it pleases, so long as it eventually pays the overpayment back with interest. *See* 26 U.S.C. § 6611.

We thoroughly disagree. These tax overpayments were never Guam's to begin with, and it has no legal claim to them. *See Weber v. C.I.R.*, 138 T.C. 348, 356 (2012) ("[T]he IRS 'shall' refund any overpayment not otherwise credited . . . .") (quoting 26 U.S.C. § 6402(a)); *Estate of Michael ex rel. Michael v. Lullo*, 173 F.3d 503, 509 (4th Cir. 1999) ("If a tax payment is an 'overpayment,' the IRS must refund it.") (quoting 26 U.S.C. § 6402(a)).[16] If anything, allowing Guam six months to honor refund requests it has determined to be valid and not subject to audit or investigation is more solicitous than necessary to Guam's concerns. We discern no abuse of discretion in the district court's six-month limitation, and affirm the district court's injunction in full.

## IV.

We acknowledge that many governments struggle to balance their budgets, particularly in times of economic uncertainty and increasing fiscal demands. But, as the district

---

[16] We express no view as to extraordinary circumstances, such as war or natural disaster, that might justify delay in refunding tax overpayments.

court correctly concluded, Guam's solution — refusing to pay concededly valid requests for income tax refunds for years on end — was illegal. Guam's policy also fell most heavily on taxpayers of limited means, while expedited refunds were available to those with personal or political connections. As the district court held and its injunction assures, Guam must find another way to deal with its fiscal difficulties.

**AFFIRMED.**