PRECEDENTIAL
UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-3143
_____

DANIEL FERRERAS; EDWIN GONZALEZ; DOUG
BILLITZ; RUEBEN RAMIREZ; RAMON COCA;
CHRISTOPHER FAUST; MASOUD ZABIHIALAM;
SCOTT ELLENTUCK; DENIS LIPPENS, On Behalf of
themselves and all others similarly situated

v.

AMERICAN AIRLINES, INC.,
                    Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-16-cv-02427)
District Judge:  Hon. Jose L. Linares
_____

Argued
October 15, 2019

Before:  CHAGARES, JORDAN, and RESTREPO, *Circuit
Judges.*

(Filed: December 24, 2019)
_____

Jeffrey I. Kohn
Anton Metlitsky   [ARGUED]
Mark W. Robertson
O'Melveny & Myers
7 Times Square
Time Square Tower, 33rd Floor
New York, NY 10036

Jason Zarrow
O'Melveny & Myers
1625 I Street, N.W.
Washington, DC 20006
        *Counsel for Appellant*

Brett R. Gallaway
Steven J. Hyman
Lee S. Shalov   [ARGUED]
Wade C. Wilkinson
McLaughlin & Stern
260 Madison Avenue
New York, NY 10016
        *Counsel for Appellees*

Adam G. Unikowsky
Jenner & Block
1099 New York Avenue – Suite 900
Washington, DC   20001
        *Counsel for Amicus Appellant*

_____

_____

JORDAN, *Circuit Judge*.

This case involves claims for overtime wages brought by employees of American Airlines, Inc. ("American"). The employees allege that American violated the New Jersey Wage and Hour Law ("NJWHL") because the airline's timekeeping system defaults to paying employees based on their work schedules, even if they work additional hours outside of their shifts and in excess of 40 hours per week.

The employees brought their claims as a putative class action and moved for class certification. The District Court decided that all of the requirements for class certification, as set forth in Federal Rule of Civil Procedure 23, were met, and it thus certified the class. American appeals that order, arguing that the District Court did not conduct a rigorous analysis and that several of the requirements of Rule 23, including commonality and predominance, were not met. American argues that this case cannot proceed as a class action because determining when each employee was actually working will necessarily require individualized inquiries. We agree and will therefore reverse the order of the District Court.

## I.     BACKGROUND

American's timekeeping system is programmed to calculate pay for employees only for the duration of their shifts, excluding an automatic deduction for a 30-minute meal break. If an employee clocks in before the employee's shift begins or clocks out after the shift ends, the timekeeping system defaults

3

to assuming that the employee only worked during the shift, rather than working any extra time. American calls those pre- and post-shift clock-in time durations "grace periods." The grace periods allow employees to avoid having to clock in exactly when their shift begins or clock out exactly when their shift ends. Similarly, the timekeeping system's assumption that an employee takes a 30-minute meal break during a shift means that employees do not have to return to the time clock before and after each meal break.

If employees actually do perform work during grace periods or meal breaks, American's policy requires them to identify for a supervisor the time they worked outside of their shift and ask for approval of that time as an "exception" to their ordinary work hours. Otherwise, they are not paid for the time worked outside of their shift.

The class as certified includes all non-exempt, hourly employees at American's Newark Liberty International Airport ("Newark airport") station, who were employed at any time from April 29, 2014 through the present. The named plaintiffs are two fleet service employees and seven mechanics at that airport. Fleet service employees handle cargo, assist with lavatory services, and help maneuver aircrafts in and around hangars. Mechanics perform repairs and updates on airplanes. A third category of non-exempt hourly-paid employees included in the class is passenger service agents, who check passengers in and manage boarding at the gates. None of the named plaintiffs are passenger service agents.

The plaintiffs complain that, in violation of the NJWHL, American did not pay its employees for all time worked because its timekeeping system defaults to paying

4

employees based on their work schedules rather than on the time they actually spent working. The plaintiffs also allege that, although American purports to have procedures to compensate employees for unpaid time, management regularly refuses to pay employees for pre- and post-shift work and work done during meal breaks. The claims in the complaint focus on three periods of the workday: (1) while the plaintiffs were clocked in but before or after their scheduled shift time; (2) during their scheduled meal breaks; and (3) while off-the-clock.

In seeking class certification, the plaintiffs argued that, according to the record, once an American employee clocks in, the employee begins working until he or she clocks out, and the "[e]mployees do not delay or engage in non-job-related personal activities while on the clock." (D.I. 104-1 at 5.) American responded that class certification was inappropriate because the record evidence shows that employees arrived early and left late for a variety of reasons and engaged in personal activities before and after their shifts. For example, American cited one employee as saying that he sometimes watched TV before his shift, and another as saying he chatted with other mechanics in the break room before his shift began. Thus, American argued, the District Court would have to engage in individualized inquiries to determine if and when there were occasions when a particular employee was not compensated for time periods during which he or she was actually working while clocked in, and the Court would likewise have to engage in individualized inquiries to determine when employees were actually working while off the clock.

The District Court granted the plaintiffs' motion for class certification and created three subclasses. The first subclass was defined as employees who "have been denied compensation for work performed before and after their shifts while on the clock" (the "Grace Period Subclass"). (App. at 3.) The second subclass was defined as employees "who have been denied compensation for work performed during meal periods" (the "Meal Break Subclass"). (App. at 4.) The third subclass was defined as employees "who have been denied compensation for work performed before their shifts before clocking in, and for work performed after their shifts after clocking out" (the "Off-the-Clock Subclass"). (*Id.*)

In its order granting class certification, the District Court identified two questions it said are common to the class: first, whether "hourly-paid American employees at Newark Liberty International Airport are not being compensated for all hours worked due to the manner in which American operates its timekeeping system[,]" and second, "whether American is violating the NJWHL by imposing a schedule-based compensation system that in theory permits a supervisor to authorize compensation for work performed outside of a scheduled shift, but in practice discourages employees from seeking such authorization[.]" (App. at 13.)

In determining that the commonality and predominance requirements had been met, the District Court cited favorably to caselaw regarding conditional certification under the Fair Labor Standards Act ("FLSA") and said that plaintiffs had presented sufficient "allegations and initial evidence" to certify the subclasses "at this juncture." (App. at 13, 14.) The Court also said American's argument that whether the plaintiffs were actually working – rather than engaging in personal activities

6

– when clocked in pre- and post-shift was "to be addressed during discovery, and does not merit a denial of class certification at this juncture[.]" (App. at 15.)

American petitioned us under Federal Rule of Civil Procedure 23(f) for review of the class certification decision, and we granted that petition. This appeal followed.

## II.    DISCUSSION[1]

A party seeking class certification must satisfy the four requirements of Rule 23(a), as well as the requirements of either Rule 23(b)(1), (b)(2), or (b)(3). *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 309 n.6 (3d Cir. 2008). Under Rule 23(a),

---

[1] The District Court had jurisdiction under 28 U.S.C. § 1332(d). Although we conclude that a class cannot be certified, that does not mean that the District Court lacked jurisdiction. *See Coba v. Ford Motor Co.*, 932 F.3d 114, 118-19 (3d Cir. 2019) (holding that a subsequent denial of class certification does not divest the district court of subject-matter jurisdiction when the court properly exercised jurisdiction pursuant to § 1332(d) at the time a claim was filed). We have jurisdiction under 28 U.S.C. § 1292(e). "We review a class certification order for abuse of discretion, which occurs if the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact. [W]hether an incorrect legal standard has been used is an issue of law to be reviewed *de novo.*" *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d 305, 312 (3d Cir. 2008) (alteration in original) (internal quotation marks and citation omitted).

> (1) the class must be so numerous that joinder of all members is impracticable (numerosity); (2) there must be questions of law or fact common to the class (commonality); (3) the claims or defenses of the representative parties must be typical of the claims or defenses of the class (typicality); and (4) the named plaintiffs must fairly and adequately protect the interests of the class (adequacy of representation, or simply adequacy).

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 590-91 (3d Cir. 2012) (internal quotation marks omitted). Assuming a plaintiff can show that all of those conditions exist, the requirements of Rule 23(b) come into play. Here, the plaintiffs are proceeding under Rule 23(b)(3), which requires proving, first, that questions of law or fact common to class members predominate over individualized questions, which is commonly called the "predominance" requirement, and, second, that the class action device is superior to other methods for resolving the claims, which is often referred to as the "superiority" requirement. Fed. R. Civ. P. 23(b)(3).

Class "certification is proper only if the trial court is satisfied, after a rigorous analysis" that all of the necessary Rule 23 requirements have been fulfilled. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-51 (2011). The Rule "does not set forth a mere pleading standard." *Id.* at 350. As we explained in *In re Hydrogen Peroxide*, "the decision to certify a class calls for findings by the court, not merely a 'threshold showing' by a party, that each of the requirements of Rule 23 is met." *In re Hydrogen Peroxide*, 552 F.3d at 307. A rigorous analysis requires that factual determinations be made by a

preponderance of the evidence. *Mielo v. Steak 'n Shake Operations, Inc.*, 897 F.3d 467, 483-84 (3d Cir. 2018). Thus, although a trial court has "broad discretion to control proceedings and frame issues for consideration under Rule 23[,]" "a class may not be certified without a finding that each Rule 23 requirement is met." *In re Hydrogen Peroxide*, 552 F.3d at 310. Prior to certifying a class, a district court must resolve every dispute that is relevant to class certification. *Id.* at 320.

American argues that the District Court did not apply the proper class certification standard and that commonality, under Rule 23(a), and predominance, under Rule 23(b)(3), were not met. We address those arguments in turn.[2]

### A. The District Court Did Not Apply the Proper Standard for Class Certification.

The District Court's analysis departed from the standards we have articulated for evaluating a motion for class

---

[2] American also says that the District Court erred in finding that the superiority requirement was met and that the class was ascertainable, as required by our precedent. *See Marcus*, 687 F.3d at 592-93 ("[A]n essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3), is that the class must be currently and readily ascertainable based on objective criteria."). Because we find that commonality and predominance were not met and, in this case, cannot be met, we do not reach those arguments. Nor do we address the question of adequacy of representation raised by the absence of any named plaintiff from among the passenger service agents.

certification. Specifically, there are three problems with the Court's decision: first, it in effect certified the class conditionally; second, it applied a "pleading" and "initial evidence" standard; and third, it failed to resolve conflicts in the evidence.

The first problem may spring from confusion about class certification under Rule 23 and collective actions under the FLSA. Rule 23, unlike the FLSA, does not allow for conditional certification. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 74 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA[.]"). As we have cautioned before, "[c]ertification may not be granted because the plaintiff promises the class will be able to fulfill Rule 23's requirements, with the caveat that the class can always be decertified if it later proves wanting. To certify a class in this manner is effectively to certify the class conditionally, which Rule 23 does not permit." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 358 (3d Cir. 2013). Instead, class certification under Rule 23 requires a district court to be satisfied by a preponderance of the evidence that the plaintiff has proven each of the Rule's requirements is met. *See* Fed. R. Civ. P. 23 advisory committee's note to 2003 amendments ("A court that is not satisfied that the requirements of Rule 23 have been met should refuse certification until they have been met."). The District Court here cited approvingly to a case dealing with conditional certifications under the FLSA, and twice explained that the plaintiffs had met their burden "*at this juncture.*" (App. at 14, 15 (emphasis added).) That reliance on, and application of, principles of conditional certification in the Rule 23 context cannot be permitted.

10

Similarly, the Court deviated from our precedent by employing a pleading and initial evidence standard, rather than requiring proof by a preponderance of the evidence. The District Court referred to Rule 23(b)'s requirements as "pleading requirements" and said that the plaintiffs had met those requirements by setting forth "allegations and initial evidence." (App. at 8, 12-13.) But Rule 23 does not set forth a mere pleading obligation. *Wal-Mart*, 564 U.S. at 350. The District Court's acceptance of pleading and initial evidence as an acceptable standard is similar to the "threshold showing" standard we rejected in *In re Hydrogen Peroxide*, 552 F.3d at 321. There we explained that "[a] 'threshold showing' could signify, incorrectly, that the burden on the party seeking certification is a lenient one (such as a prima face showing or a burden of production) or that the party seeking certification receives deference or a presumption in its favor." *Id.* So too with a pleading or initial evidence standard. Rule 23 requires more than allegations, initial evidence, or a threshold showing. It requires a showing that each of the Rule 23 requirements has been met by a preponderance of the evidence at the time of class certification. The District Court thus should not have determined that the Rule 23 requirements had been met based on "allegations and initial evidence."

Finally, it was error for the District Court to leave unresolved conflicts in the evidence before it. For example, the Court did not engage with American's argument that predominance was not met because individualized proof would be required to prove that employees were actually working during the various time periods for which they claim they were not paid. Instead, the Court noted that the issue would be "addressed during discovery and that it does not merit a denial of class certification at this juncture[.]" (App. at 15.) The

11

rigorous analysis demanded by Rule 23 requires a court to resolve such disputes relevant to class certification, before being satisfied that each of the Rule's requirements has been met. *Marcus*, 687 F.3d at 591.

Because the District Court did not engage in that type of analysis, we could vacate and remand for further application of the Rule 23 standards. But because discovery was essentially complete when the District Court ruled on the motion for class certification, and the plaintiffs have stated that no additional discovery is needed to decide the certification issue, we will reverse rather than remand, as, based on our review of the record, it is clear that commonality and predominance cannot be met.

### B. Commonality and Predominance Cannot Be Met.

Rule 23 requires a showing that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "What matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart*, 564 U.S. at 350 (emphasis in original).

The predominance requirement "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016). Courts must "give

12

careful scrutiny to the relation between common and individual questions in a case. An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member[.]" *Id.* (internal quotation marks omitted).

The commonality and predominance requirements are closely linked. But the Rule 23(b)(3) predominance requirement is "far more demanding than the commonality requirement" found in Rule 23(a). *In re Hydrogen Peroxide*, 552 F.3d at 311 (internal quotation marks omitted). In fact, "where an action is to proceed under Rule 23(b)(3), the commonality requirement is subsumed by the predominance requirement." *Danvers Motor Co., Inc. v. Ford Motor Co.*, 543 F.3d 141, 148 (3d Cir. 2008) (internal quotation marks omitted). If the commonality requirement cannot be met, then the more stringent predominance requirement obviously cannot be met either. *Cf. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997) ("Even if Rule 23(a)'s commonality requirement may be satisfied …, the predominance criterion is far more demanding.").

The plaintiffs here cannot satisfy even the commonality standard. In its opinion, the District Court identified two common questions: first, whether hourly-paid American employees at Newark airport are not being compensated for all hours worked, and second, whether American has a policy that discourages employees from seeking exceptions for work done outside of their shifts. It is not clear, however, how those questions can "generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350 (emphasis in original). The first question cannot be answered

13

by common evidence about the timekeeping system because a yes or no answer tells us nothing about actual common work habits, if there are any. The plaintiffs will still need to go through the process of proving that each individual employee worked overtime and is thus entitled to additional compensation, regardless of any common evidence about American's timekeeping system.

Similarly, the second question cannot drive resolution of the plaintiffs' case because, again, their claims are, at bottom, that they were not paid overtime compensation for hours worked, not that American's overarching policy regarding exceptions has deprived anyone in particular of compensation to which he or she was entitled. Moreover, the record evidence only demonstrated that a policy of not paying employees who submitted requests for overtime may have existed for one group of employees – the mechanics. But the District Court certified subclasses consisting of all non-exempt, hourly employees at American's Newark airport station, not just mechanics. The passenger service agents and fleet service employees have different responsibilities and supervisors than the mechanics. Even if one of the groups was affected by such a policy, that would not drive the resolution of the litigation on a classwide basis, *see Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 129 (3d Cir. 2018) (expressing doubt that the conflicting testimony about a company-wide policy from plaintiffs with different managers could establish commonality and predominance), and thus the second common question the District Court identified did not establish commonality.

Having failed to show commonality, the plaintiffs necessarily failed too in their effort to show predominance, and

14

it was error for the District Court to conclude otherwise. Plaintiffs will have to offer individualized proof to show that they were actually working during the various time periods at issue, the main point of dispute in this case. For the Grace Period Subclass, the employees cannot rely on the time clock to prove when they were actually working because there is conflicting evidence about whether they were working the entire time they were clocked in. For example, some employees testified that they began working immediately after clocking in. Others testified that they chatted with co-workers or watched TV after clocking in but before their shifts began. Thus, whether they were actually working pre- and post-shift is an open and inherently individualized question.

The District Court also certified the Meal Break and Off-the-Clock Subclasses. The record shows, however, that employees were not all working during meal breaks. Any members of the Meal Break Subclass would have to offer individualized evidence regarding which meal breaks they spent working and for how long. And, of course, any claim that an employee was working off-the-clock would require an individualized inquiry as to when and to what extent that happened. There is no easy measure, like the time clock, to which the parties can turn to determine the amount of time an employee may have been working. Accordingly, plaintiffs would again need to provide particularized evidence to show when employees were working, so common issues do not predominate over individual ones.

The District Court cited *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036 (2016), to support its conclusion that individualized variations should not defeat class certification. But that case is clearly distinguishable. In *Tyson*

15

*Foods*, the class consisted of employees at a pork processing plant who were not compensated for the time spent donning and doffing the protective equipment they had to wear at work. 136 S. Ct. at 1041-42. The issue before the Supreme Court was whether representative evidence could be used to prove the amount of time spent donning and doffing, even though individual employees took different amounts of time to perform those tasks. *Id.* at 1041. There was, however, no dispute about what the activity was that Tyson and the employees were arguing over. It was the same for everyone – donning and doffing protective gear. The record evidence here, on the other hand, demonstrates that employees were not always working while clocked in and there was substantial variability in what they were doing, even if some of it could be called work. Accordingly, this case is unlike *Tysons Foods*, and the employees would need individualized, not representative, evidence to prove their case. Thus, predominance cannot be established.

## III. CONCLUSION

Because the District Court did not perform a rigorous analysis, and because commonality and predominance cannot be met under a rigorous analysis, we will reverse the class certification order.